# EXHIBIT 15

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHARLENE McEVOY,<br><br>Plaintiff,<br><br>v.<br><br>FAIRFIELD UNIVERSITY<br>Defendant. | CIVIL ACTION NO.<br><br>3:17-cv-01861 (MPS)<br><br><br><br>May 11, 2018 |

## PLAINTIFF'S RESPONSES TO FAIRFIELD UNIVERSITY'S
## FIRST REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff Sharlene McEvoy responds to Defendant Fairfield University's First Requests for Admission as follows:

1.    In 2012, Paul Fitzgerald, SJ, Senior Vice President of Fairfield University, ("Fitzgerald") sought suggestions about the reinvigorating the Pre-Law Advising Program.

**RESPONSE:  Plaintiff objects to this request to the extent that it assumes that there was an official "Pre-Law Advising Program" at that time to "reinvigorate." Subject to that objection, Plaintiff admits that Fitzgerald sought suggestions regarding Pre-Law Advising.**

2.    In 2012, McEvoy submitted a proposal to Fitzgerald with her ideas for reinvigorating the Pre-Law Advising Program.

**RESPONSE:  Plaintiff objects to this request to the extent that the usage of the term "reinvigorating" may not be appropriate.  Subject to that objection, Plaintiff admits that, in 2012, McEvoy submitted a proposal to Fitzgerald with her ideas regarding the Pre-Law Advising Program.**

3.    A true and accurate copy of McEvoy's proposal for the Pre-Law Advising Program is attached as Exhibit 1 (McEvoy000203-000204).

**RESPONSE:  Admitted.**

4.    In her proposal to Fitzgerald, McEvoy's proposed establishing a Pre-Law Club; having once a semester luncheons with local attorneys as guest speakers; keeping records on students interested in attending law school, including their grade point averages, LSAT scores, and the law school to which they apply and then to which they are accepted; establishing summer and semester internships; holding a Law Day dinner; and raising money to finance tutors for LSAT takers and for prizes for Pre-Law Club members.

**RESPONSE: Admitted.**

5.    McEvoy was appointed to the position of Director of the Pre-Law Advising Program on or about July 3, 2012 for a three-year term beginning July 1, 2012 and concluding June 30, 2015, with an annual stipend of $10,000.

**RESPONSE: Admitted.**

6.    A true and accurate copy of the July 3, 2012 appointment letter is attached as Exhibit 2 (McEvoy 000004).

**RESPONSE: Admitted.**

7.    Dr. David Sapp supervised McEvoy in her role as Director of the Pre-Law Advising program in 2012-2013.

**RESPONSE: Admitted in part; Denied in part. Dr. Sapp did not come on board until 2013 so he could not have supervised McEvoy for the entire 2012-2013 academic year.**

8.    After 2012-2013 school year, McEvoy rejected the involvement of the Advancement Office in St. Robert Bellarmine Pre-Law Society Program.

**RESPONSE: Denied.**

9.    Dr. David Sapp supervised McEvoy in her role as Director of the Pre-Law Advising program in 2013-2014.

**RESPONSE: Plaintiff objects to this request to the extent that "supervised" is not defined and could be subject to differing interpretations. Subject to that objection, Plaintiff admits that she reported to Dr. Sapp in connection with her role as Director of the Pre-Law Advising Program in 2013-2014 academic year.**

2

10.     During the time that McEvoy reported to Dr. Sapp about the Pre-Law Advising Program, he expressed concerns about the program.

**RESPONSE:  Plaintiff objects to this request on the grounds that the phrase "expressed concerns about the program" is vague, and subject to different interpretations.  Nevertheless, Denied.**

11.     When Dr. Sapp left Fairfield University in 2014, McEvoy then reported to Dr. Yohuru Williams ("Williams") in her role as the Director of Pre-Law Advising Program.

**RESPONSE:  Admitted.**

12.     McEvoy worked with Susanne Quinlivan ("Quinlivan") in developing and implementing programs for the Pre-Law Advising Program.

**RESPONSE:  Admitted, in part.  Ms. Quinlivan's involvement was more on the implementation of programs than the development of them.**

13.     In the spring term of 2013, McEvoy submitted a report regarding the work that had been done on the Pre-Law Advising Program during the 2012-2013 school year.

**RESPONSE:  Admitted.**

14.     A true and accurate copy of the 2012-2013 annual report on the Pre-Law Advising Program submitted by McEvoy is attached as Exhibit 3 (McEvoy000093-000095).

**RESPONSE:  Denied.**

15.     In McEvoy's 2012-2013 Pre-Law Program annual report she reported on the establishment of the St. Robert Bellarmine Pre-Law Society; a fall student-alumni event; the law school fair which continued to be held, with approximately 50 students attending; a spring student-alumni event; a St. Robert Bellarmine Pre-Law Society dinner; an online video program for LSAT preparation and an LSAT boot camp with 10 students participating; a seminar on personal statements for law school applications; publication of a brochure on Pre-Law Advising; the revamping of the Pre-Law website; mentoring nearly 30 students; and the creation of a newsletter.  She also set a goal to create an endowment of $500,000 to support the program.

3

**RESPONSE: Admitted in part, denied in part. Plaintiff admits that she submitted a 2012-2013 annual report, and that the document speaks for itself. However, Plaintiff denies that the version of the 2012-2013 annual report that Plaintiff prepared "set a goal to create an endowment of $500,000 to support the program."**

16.     The idea for reformatting the website for the Pre-Law Advising Program was suggested by John Bica.

**RESPONSE: Admitted in part; Denied in part. Mr. Bica suggested the timeline, but Plaintiff provided all information for filling out the timeline and other data.**

17.     John Bica implemented the reformatting of the website for the Pre-Law Advising Program.

**RESPONSE: Plaintiff objects to the use of the term "implemented" in this request, as it is vague and can be interpreted to have different meanings. Nevertheless, subject to that objection, Plaintiff has made a reasonable inquiry and the information she knows or can readily obtain is insufficient to enable her to admit or deny this statement.**

18.     In the spring term of 2014, McEvoy submitted a report to Williams regarding the work that had been done on the Pre-Law Advising Program Program during the 2013-2014 school year.

**RESPONSE: Admitted.**

19.     A true and accurate copy of the 2013-2014 annual report on the Pre-Law Advising Program submitted by McEvoy is attached as Exhibit 4 (McEvoy000096-000100).

**RESPONSE: Denied.**

20.     In McEvoy's 2013-2014 Pre-Law Program annual report she reported that there were 40-50 active student members of the St. Robert Bellarmine Pre-Law Society; that there was a law school panel in the fall to discuss applying to law school; that the law school fair continued to be held; that there was a fall panel of alumni lawyers who discussed what they do with a law degree; that there was a spring discussion on financing law school; that the second annual St. Robert Bellarmine Pre-Law Society dinner was held; and that a LSAT prep course was offered, but not held due to lack of participants.

4

**RESPONSE: Plaintiff has made a reasonable inquiry and the information that is known or readily obtainable by Plaintiff does not allow her to admit or deny this request as it is written because Plaintiff does not have a copy of the 2013-2014 annual report, and does not specifically remember what she wrote in that report with this level of precision.**

21.    During the 2014-2015 school year, McEvoy met with Williams to discuss the Pre-Law Advising Program.

**RESPONSE: Admitted.**

22.    During the 2014-2015 school year, when McEvoy met with Williams to discuss the Pre-Law Advising Program, he expressed concerns about the Pre-Law Advising Program.

**RESPONSE: Denied.**

23.    During the 2014-2015 school year, Williams expressed his concern to McEvoy about his office's difficulty contacting her by email or telephone.

**RESPONSE: Denied.**

24.    During the 2014-2015 school year, Williams expressed to McEvoy that he wanted to talk to her about the Pre-Law Advising Program.

**RESPONSE: Admitted.**

25.    During the 2014-2015 school year, Williams expressed his concerns about the Pre-Law Advising Program to McEvoy.

**RESPONSE: Denied.**

26.    During the 2014-2015 school year, Williams expressed his concerns about McEvoy's interactions with the Advancement Office.

**RESPONSE: Denied. Williams did not express his concerns about McEvoy's interactions with the Advancement Office. While Plaintiff informed Williams that Chrisopher Pates was making suggestions on how to run the Pre-Law Advising Program, which was not in his province to do, Williams did not express that he had**

5

concerns about how McEvoy interacted with Mr. Pates, or anyone else from the Advancement Office with whom Plaintiff interacted.

27.     During the 2014-2015 school year, McEvoy rejected the assistance of Christopher Pates of the Advancement Office who was seeking to help raise funds for the Pre-Law Advising Program.

**RESPONSE:  Plaintiff denies that she rejected the assistance of Pates in regards to raising funds for the Pre-Law Advising Program.**

28.     During the 2014-2015 school year, McEvoy did not assist Christopher Pates of the Advancement Office in developing a statement to use in seeking to help raise funds for the Pre-Law Advising Program.

**RESPONSE:  Plaintiff objects to this request on the grounds that it assumes and/or implies that Plaintiff's assistance was requested, and she refused to provide assistance in response to that request, which was not the case.  Subject to that objection, Plaintiff admits that the statement was prepared without Plaintiff, but was only sent to Plaintiff after it had already been prepared.**

29.     During the 2014-2015 school year, McEvoy walked out of a meeting with Christopher Pates of the Advancement Office, who was seeking to develop a statement to help raise funds for the Pre-Law Advising Program.

**RESPONSE:  Denied.**

30.     After 2012-2013 school year, McEvoy did not assist the Advancement Office in the development of case statement for raising funds for the Pre-Law Advising Program.

**RESPONSE:  Plaintiff objects to this request on the grounds that the phrase "development of case statement for raising funds" is vague and subject to different interpretations.  Subject to that objection, Denied.**

31.     After 2012-2013 school year, McEvoy did not assist the Advancement Office in the development of case statement describing the vision and goals of the Pre-Law Advising Program and its financial needs.

**RESPONSE:  Plaintiff objects to this request on the grounds that the phrase "development of case statement" is vague and subject to different interpretations. Subject to that objection, Plaintiff was never asked to participate in the development**

6

of a "case statement" in 2014, but was instead provided a copy of a "case statement" after it was prepared.

32.    After 2012-2013 school year, McEvoy did not cooperate with the Advancement Office in its fundraising efforts on behalf of the Pre-Law Advising Program.

**RESPONSE: Denied.**

33.    McEvoy had conflicts with members of the staff of the Advancement Office regarding their involvement in St. Robert Bellarmine Pre-Law Society Programs.

**RESPONSE: Denied.**

34.    In the spring term of 2015, McEvoy submitted a report to Williams regarding the work that had been done on the Pre-Law Advising Program during the 2014-2015 school year.

**RESPONSE: Admitted.**

35.    A true and accurate copy of the 2014-2015 annual report on the Pre-Law Advising Program submitted by McEvoy is attached as Exhibit 5 (McEvoy000101-000105).

**RESPONSE: Admitted.**

36.    In McEvoy's 2014-2015 Pre-Law Program annual report she reported that the St. Robert Bellarmine Pre-Law Society sponsored a Red Mass in the fall with the Bishop of Bridgeport and approximately 20 student in attendance; that a law school fair was held with about 30 students attending; that the St. Robert Bellarmine Pre-Law Society sponsored a trip to Williamstown Massachusetts to view the Magna Carta with 23 students participating; that a program was held on preparing a personal statement; that 7 students participated in the Powerscore LSAT prep class on campus while 2 others took the course online; that 5 students attended a mock trial demonstration at Quinnipiac Law School; that the Law Day luncheon was held with 30 students and alumni attending; and that she met with between 30 and 35 students on the law school application process.

**RESPONSE: Plaintiff admits only that a true and accurate copy of the 2014-2015 annual report is attached as Exhibit 5 (see response to Request No. 36), and that the document speaks for itself.**

7

37.     The number of students who participated in Pre-Law Advising Programs did not increase during the 2014-2015 school year over the number of students who participated in the 2013-2014 school year.

**RESPONSE:  Plaintiff has made a reasonable inquiry and the information that she knows or can readily obtain is insufficient for her to be able to admit or deny this statement as it is written.**

38.     On June 10, 2015, Williams, after consulting with Dr. Lynn Babington, ("Babington"), offered McEvoy a one-year appointment as the Director of the Pre.-Law Advising Program

**RESPONSE:  Admitted in part.  Plaintiff admits that the June 10, 2015 letter from Williams is attached as Exhibit 6 (McEvoy000008), which speaks for itself. Plaintiff has insufficient information to admit or deny whether that June 10, 2015 letter was sent by Williams "after consulting with Dr. Lynn Babington."**

39.     A true and accurate copy of the June 10, 2015 one year appointment letter is attached as Exhibit 6 (McEvoy000008).

**RESPONSE:  Admitted in part.  Plaintiff admits that a true and accurate copy of the June 10, 2015 letter is attached as Exhibit 6, which speaks for itself.**

40.     A true and accurate copy of the 2015-2016 annual report on the Pre-Law Advising Program submitted by McEvoy is attached as Exhibit 7 (McEvoy000383-000387.

**RESPONSE:  Admitted.**

41.     In McEvoy's 2015-2016 Pre-Law Program annual report she reported that the St. Robert Bellarmine Pre-Law Society sponsored a Red Mass in the fall with the Bishop of Bridgeport and approximately 10 student in attendance; that the St. Robert Bellarmine Pre-Law Society sponsored trips to the Edward M. Kennedy Institute for the United States Senate with 23 students participating, to a play "Defamation," to a film "Dishonesty: The Truth about Lies, and to the American Museum of Tort Law" (18 students attended the later event); that a law school admissions information panel was held in the fall; that a lawyer-alumni panel was held in the fall about personal injury law; that a program on financing law school was held with approximately 12 students attending; that 6 students participated in the Powerscore LSAT preparation class; and that the Law Day luncheon was held with 30 students and alumni attending.

8

**RESPONSE: Plaintiff admits only that a true and accurate copy of the 2015-2016 annual report on the Pre-Law Advising Program is attached as Exhibit 7, and that the document speaks for itself.**

42.    During the 2015-2016 school year, McEvoy did not contact Williams or Babington about extending her appointment as Director of the Pre-Law Advisory Program beyond June 30, 2016.

**RESPONSE: Admitted.**

43.    McEvoy's term as the Director of the Pre-Law Advisory Program ended on June 30, 2016.

**RESPONSE: Admitted.**

44.    The same persons who decided to offer McEvoy a one-year contract for the 2015-2016 year as Director of the Pre-Law Advisory Program were the same persons who decided to not have McEvoy continue in the Director position.

**RESPONSE: Plaintiff has made a reasonable inquiry and the information that she knows or can readily obtain is insufficient for her to be able to admit or deny this statement as it is written.**

45.    Prior to McEvoy becoming the Director of the Pre-Law Advising Program, the University had held law school fairs at which law schools came to campus to discuss law school with interested students.

**RESPONSE: Admitted in part. Plaintiff admits that prior to her becoming the Director of Pre-Law Advising Program, the University had held law school fairs. Plaintiff lacks sufficient information to admit the remaining statements.**

46.    As the Director of the Pre-Law Advising Program, McEvoy never established any summer internships.

**RESPONSE: Admitted.**

47.    As the Director of the Pre-Law Advising Program, McEvoy never established any semester internships.

**RESPONSE: Admitted.**

9

48.    As the Director of the Pre-Law Advising Program, McEvoy never raised any money to support the Pre-Law Advising Program.

**RESPONSE:  After a reasonable inquiry, Plaintiff has insufficient information to admit or deny this request, as money may have been raised at the Dinners that Plaintiff planned and supported.**

49.    Quinlivan made the arrangement for a law school admissions representative or a Powerscore representative to make the presentations on personal statements.

**RESPONSE:  Plaintiff objects to this request on the grounds that the phrase "made the arrangement for" is vague and ambiguous and subject to multiple interpretations. Without clarification on the meaning of the phrase "made the arrangement for" Plaintiff cannot admit or deny this statement.**

50.    Quinlivan made the arrangements for a law school admission representative to make the presentation on financing law school.

**RESPONSE:  Plaintiff objects to this request on the grounds that the phrase "made the arrangement for" is vague and ambiguous and subject to multiple interpretations. Without clarification on the meaning of the phrase "made the arrangement for" Plaintiff cannot admit or deny this statement.**

51.    During May 2016 when McEvoy had not received any notice regarding her re-appointment to be the Director of the Pre-Law Advising Program, she did not contact Williams or Babington about the position.

**RESPONSE:  Admitted.**

52.    During June 2016, when McEvoy had not received any notice regarding her re-appointment to be the Director of the Pre-Law Advising Program, she did not contact Williams or Babington about the position.

**RESPONSE:  Admitted.**

53.    During July 2016, when McEvoy had not received any notice regarding her re-appointment to be the Director of the Pre-Law Advising Program, she did not contact Williams or Babington about the position.

10

**RESPONSE: Admitted.**

54.    During August 2016, when McEvoy had not received any notice regarding her re-appointment to be the Director of the Pre-Law Advising Program, she did not contact Williams or Babington about the position.

**RESPONSE: Admitted.**

55.    After McEvoy learned that Dr. Alphonso had been appointed to be the Director of the Pre-Law Advising Program, she did not ask Williams or Babington why she had not been reappointed.

**RESPONSE: Admitted.**

56.    After McEvoy learned that Dr. Alphonso had been appointed to be the Director of the Pre-Law Advising Program, she did not seek to meet with Williams or Babington about why she had not been reappointed.

**RESPONSE: Admitted.**

57.    During July 2016, McEvoy did not contact Quinlivan about planning for the 2016-2017 school year's Pre-Law Advising Program.

**RESPONSE: Admitted.**

58.    During August 2016, McEvoy did not contact Quinlivan about planning for the 2016-2017 school year's Pre-Law Advising Program.

**RESPONSE: Admitted.**

PLAINTIFF,
SHARLENE MCEVOY,

By_____

Todd D. Steigman (ct26875)
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford CT 06103
Phone: (860) 246-2466
Fax: (860) 246-1794
tsteigman@mppjustice.com
Her Attorneys

## CERTIFICATION OF SERVICE

This is to certify that on this 11th day of May, 2018, a copy of the foregoing was served by email on the following counsel of record:

Gary S. Starr, Esq.
Shipman & Goodwin LLP
One Constitution Plaza
Hartford CT 06103
gstarr@goodwin.com
*Counsel for Defendant*

By_____

Todd D. Steigman

12