# EXHIBIT 21

Dr. Sharlene A. McEvoy
200 Emmett Avenue
Derby, CT 06418

June 12, 2017

Donna Wilkerson Brillant
State of Connecticut
Commission on Human Rights and Opportunities
350 Fairfield Avenue, 6th Floor
Bridgeport, CT 06604

Re:   Dr. Sharlene Ann McEvoy v. Fairfield University
      CHRO No. 1720403
      EEOC No. 16A-2017-01000

Dr. Ms. Wilkerson Brillant:

I am submitting this rebuttal in response to the Answer and Position Statement filed by Respondent Fairfield University, dated May 30, 2017.

I have been a member of the faculty at Fairfield University for more than 30 years, since September 1, 1986. I am currently 66 years old.

Respondent discriminated against me on the basis of my age when it did not reappoint me as the Director of its Pre-Law Advising Program, and replaced me in that position with a younger faculty member who is more than 30 years younger than me.

"The initial burden is on the plaintiff to establish a prima facie case. In order to establish a prima facie case, "a plaintiff must show (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Schnabel*, 232 F.3d 83, 87 (2d Cir.2000) (citing to *Woroski*, 31 F.3d 105, 108). It is important to note that, at this stage, the "burden of proof that must be met to establish a prima facie case is minimal." *Id.* (citing to *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 199 (2d Cir.1999))." *Hopkins v. New England Health Care Employees Welfare Fund*, 985 F. Supp. 2d 240, 256 (D. Conn. 2013).

I have satisfied each of the elements of a prima facie case of age discrimination:

(1) I am a member of a protected class for purposes of my age discrimination complaint because I am currently 66 years of age.

(2) I was qualified for the position of Director of the Pre-Law Advising Program as I was previously appointed to that position, and then reappointed to that position, and served in that

**CONFIDENTIAL**                                                                    MCEVOY 000072

position for four years. I have a law degree from the University of Connecticut, as well as a Masters in Political Science and a Doctorate from the University of California at Los Angeles in Public Administration/Political Science. I have also published a number of articles, and regularly teach relevant courses at Fairfield University in the areas of law and business. A copy of my CV is attached as Exhibit 1.) I am also a member of the Connecticut Bar, in Active status.[1]

(3) I suffered an adverse employment action when Respondent did not reappoint me to the position of Director of the Pre-Law Advising Program.

(4) The adverse employment action against me occurred under circumstances giving rise to an inference of discrimination because I am 66 years of age and Respondent replaced me with another faculty member who is more than 30 years younger than me. *Hopkins v. New England Health Care Employees Welfare Fund*, 985 F. Supp. 2d 240, 257 (D. Conn. 2013)(age difference between plaintiff and replacement creates a prima facie case for proving age discrimination claim).

In order to conceal the true discriminatory reason for the action taken against me, Respondent has advanced numerous false assertions and allegations that are complete fabrications. As the United States Supreme Court explained in *Reeves v. Sanderson*, evidence that the employer has advanced a pretextual explanation in response to a claim of discrimination can itself be probative of a discriminatory motivation.

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. See *id.*, at 517, 113 S.Ct. 2742 ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992); *see also Wilson v. United States*, 162 U.S. 613, 620–621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); 2 J. Wigmore, Evidence § 278(2), p. 133 (J. Chadbourn rev. 1979). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. *Cf. Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) ("[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with some reason, based his decision on an impermissible consideration"). Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

---

[1] To the contrary, it does not appear that my replacement, Dr. Alphonso, is admitted to practice law in Connecticut.

2

CONFIDENTIAL

MCEVOY 000073

*Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 147–48, 120 S. Ct. 2097, 2108–09, 147 L. Ed. 2d 105 (2000).

Here, there is abundant evidence that Respondent's explanation is a pretext.

First, Respondent's claim that Dr. Williams met with me in May of 2016 and informed me that I would not be continuing as the Director of the Pre-Law Advising Program after June 30, 2016 is false. No such meeting ever occurred and Dr. Williams never communicated that information to me. In fact, Respondent never informed me at any time that my appointment as the Director of the Pre-Law Advising Program would not be renewed. I learned that someone else had been appointed to that position on September 6, 2016 by looking at Respondent's website. After more than 30 years of service to the University, Respondent could not even treat me in accordance with principles of basic decency and courtesy by letting me know that I would not continue as the Director of the Pre-Law Advising Program after June 30, 2016. Instead, I had to learn from a website. Relatedly, it is also not true – as Respondent asserts - that Dr. Williams met with me in May 2016 and discussed the continuing issues that concerned the administration about my performance and the need to change the direction of the program. No such discussion ever occurred.

Second, in order to come up with some explanation for its decision, Respondent littered its response with numerous attacks against me that are untrue and unsupported. For instance, it is not true that Respondent informed me that it perceived deficiencies in my performance in 2013, 2014, or in 2015, or that I refused to make changes to address any such deficiencies. Respondent also falsely asserts that it was made clear to me that my reappointment as the Director for another year in June of 2015 was anticipated to be a terminal appointment. That was never communicated to me. In fact, the June 10, 2015 appointment letter from Dr. Williams explicitly states that the one year appointment was "in no way a negative reflection on your service to the university." (Respondent's Exhibit 1.) In fact, it is important to point out that Respondent never notified me that it perceived any deficiencies in my performance as the Director of the Pre-Law Advising Program at any time before filing this response to my complaint. The fact that Respondent never previously discussed any of these criticisms with me at the time, but now relies upon them in order to respond to my complaint of discrimination, reveals that they are not true and not credible.

I dispute Respondent's claims that I was not accessible by e-mail, that I did not make myself readily available to students who were taking classes in other buildings, that I was not using the Internet in an effective way to promote the Program, that I was not viewed as working cooperatively with the Development Office, that I was unwilling to communicate with the administration about the program, and that there was a lack of innovation and change in the program. Those things are not true, and no such complaints were ever communicated to me by Dr. Sapp, Dr. Williams, or any other member of Respondent's administration. Respondent does not provide any specific examples or identify any individuals who made these complaints, or the dates of any complaints, or to whom the complaints were made. Respondent also does not provide any documentation or evidentiary support regarding any such complaints.

3

**CONFIDENTIAL**

MCEVOY 000074

Contrary to the picture portrayed by Respondents, I maintain that, working in conjunction with my colleagues, I did a good job as the Director of the Pre-Law Advising Program during my four year tenure. In May of each year, I submitted a report to Respondent describing some of the activities that the Pre-Law Advising Program sponsored. I submitted such reports to Dr. Williams in May 2015 and May of 2016, but he never communicated with me about the annual reports, or the content of the reports, in any way. I have attached illustrative examples of the Pre-Law Program Annual Reports as Exhibit 2.) As the Annual Reports reflect, the Pre-law Advising Program put on a number of events and activities in each year of my tenure. Here is a partial list of some of the things that were accomplished, with the involvement of others, during my tenure as Director of the Pre-Law Advising Program:

- Oversaw revamping of the Pre-Law website.

- Wrote three informational brochures for students about choosing and applying to law school.[2]

- Arranged for panel discussions of local lawyer alumni to speak to both pre-law students and students in my Business Law courses.

- Arranged for three recent alumni who were still in law school to talk about What is the First Year of Law School like?

- Arranged for the Director of Admissions at the Fordham Law School to talk about Financing a Law School Education.

- Wrote DE JURE, a newsletter that appeared at the beginning of each semester listing events scheduled for the upcoming semester.

- Facilitated the Red Mass to be held at Fairfield. The Red Mass which is offered by the Bishop of the Diocese of Bridgeport is a tradition dating back to medieval times celebrating judges, lawyers and law students. The Mass has been held in the Chapel every fall since.

- Established a Time Line for students who were interested in law school to follow starting in the first year of college.

- Created the Law School Mentor Program, which allows current Fairfield students to meet Fairfield alumni who are currently in law school to get insights about law school. This is coordinated by Sue Quinlivan who has the contact information for law student alumni of Fairfield.

- Created the LSAT Boot Camp, which is offered each Spring by Powerscore, a company which teamed with the Pre-Law program in 2013 to

---

[2] My office address, telephone number, and e-mail address was listed on these publications so it was easy for students to contact me, as many did.

4

CONFIDENTIAL

MCEVOY 000075

offer an 80 hour course on Campus each Spring. The Pre-Law Program helped to make this course more affordable for students by paying approximately $250.00 on behalf of each student and by negotiating with Powerscore to offer an equivalent discount for each student.

- Arranged for a group of students to attend a Mock Trial at Quinnipiac University Law School, where they were also able to meet students and the Dean, and have lunch with a law school professor.

- Sponsored trips for students, such as to view the Magna Carta while it was in Massachusetts as part of its tour of the United States, to the Edward M. Kennedy Institute for the U.S. Senate in Boston, MA, to the American Museum of Tort Law in Winsted, CT where students toured the Museum and heard a panel discussion from Ralph Nader and others on issues ranging from consumer protection to mass torts to child sexual abuse litigation.

- Arranged for a presentation on the importance of the LSAT in law school admissions.

- Arranged for a Personal Statement seminar presented by the Associate Director of Admissions at the University of Connecticut, who was also an alumna of Fairfield.

- Created the Man and Woman for Others Award to be awarded at the annual Pre-Law Luncheon.

- Launched the St. Robert Bellarmine Pre-Law Society, named after the patron saint of the University who was a defender of Galileo at his trial for heresy before the Vatican Court. The Society sponsored events throughout the academic year, as well as signature events where honorees were recognized. The Society's first honoree was Raymond Dearie, a U.S. District Court Judge for the Eastern District of New York who is also an alumnus of Fairfield. Another year, the Society honored six women who embodied the theme of being pioneers at Fairfield and in the law. The keynote speaker that year was Joette Katz, a former Justice of the Connecticut Supreme Court.

Respondent's criticisms of my performance, and its proclaimed need to "reinvigorate the program and give the program a new direction," are further belied by the fact that, even though I am no longer the Director of the Pre-Law Advising Program, people have communicated to me that the Program is still doing the same things that I was doing, and that people have said wonderful things about my tenure as the Director. Respondent denigrated the Program's accomplishments, and manufactured false personal attacks against me, in order to conceal its discrimination against me on the basis of age. Respondent's portrayal of me as someone who was unwilling to meet and communicate with students is also completely contradictory to my

5

CONFIDENTIAL

record of service as an educator. Respondent granted me tenure and promoted me to the position of a full Professor, and continues to ask me to teach more than a full course load (i.e., I taught 5 courses in Fall 2016, 4 courses in Spring 2017, and 2 intersession courses).[3] Presumably, if Respondent actually had concerns about my responsiveness to students and willingness to meet with students, it would not continue to place such trust in me to educate so many of its students. The fact that Respondent's actions cannot be reconciled with the statements and rhetoric of its filing with the Commission further demonstrates that its explanation lacks credibility.

My non-reappointment as the Director of the Pre-Law Advising Program was not part of a normal rotation of directors. Respondent does not accurately portray the facts regarding the length of service of program directors. My predecessor as the Director of the Pre-Law Advising Program, Donald Greenberg, served in that capacity for many years. In fact, from my arrival at Fairfield University in 1986, until my appointment as the Director of the Pre-Law Advising Program in 2012, a period of more than 25 years, there were only two Directors of the Pre-Law Advising Program. Respondent's claims about a normal rotation of program directors is also contrary to the history of the Health Professions Program at Fairfield University. The current Advisor for the Health Professions Program at Fairfield, Geoff Church, has served in that role for a number of years (he has been at Fairfield since 2004). Respondent also misstates the facts regarding my service on the University's Fulbright Faculty Committee. The truth is that I served on the Fulbright Committee for 12 years, from 1995 until 2008. There was no regular rotation of faculty on or off the Committee. To my knowledge, there were no complaints about my performance on the Committee. In fact, I was instrumental in helping one of our students obtain a Fulbright scholarship in Canada, one of the first western countries in which Fairfield obtained a Fulbright scholarship. I also worked on several other successful applications during my tenure on the Committee, and former Acting Dean Dr. Beverly Kahn wrote a letter of recommendation for my promotion to full Professor based on my performance on the Committee. (A letter from Dr. Beverly Kahn praising my performance on the Fulbright Committee is attached as Exhibit 3.) In 2008, AVP Orin Grossman removed all members of the Committee *en masse*, but I returned to the Fulbright Committee for the 2009-2010 academic year.

In order to respond to my claim that I was replaced by a significantly younger person who is less experienced and less qualified than myself, Respondent highlights the qualifications of the much younger faculty member who it chose to replace me. However, Respondent does not argue that Dr. Alphonso was appointed to the Director position instead of me because her qualifications are superior to mine. (Some of my qualifications and publications are set forth in my CV, which is attached as Exhibit 1.)

For the reasons set forth above, and other reasons which can be made apparent through an investigation, Respondent's explanations are a pretext to conceal its age discrimination against me.

In addition to the evidence of age discrimination and false and pretextual statements by Respondent, the Commission must retain this case because of the numerous factual disputes

---

[3] When I was serving as Director of the Pre-Law Advising Program, I taught a similar course load.

6

CONFIDENTIAL

MCEVOY 000077

which are apparent from the filings by the parties. Under the applicable standards, cases which presented disputed issues of fact must be retained to that a factfinder can obtain evidence and make credibility determinations in order to determine who is telling the truth, and which party's version of events is credible.

Last, Respondent's argument that my complaint is not timely lacks merit because it is based on the false assertion that Dr. Williams informed me in May 2016 that I would not be reappointed to my position as Director of the Pre-Law Advising Program after June 30, 2016. As explained above, Dr. Williams never communicated that information to me in May 2016, or at another other time. Since Respondent's argument regarding timeliness is based upon that false factual claim, which I deny, Respondent's claim that the Commission lacks jurisdiction must also be denied.

For the reasons stated above, and the facts alleged in my complaint, the Commission should retain this case for additional investigation.

Sincerely,

Dr. Sharlene McEvoy

Cc:  Attorney Gary Starr

7

CONFIDENTIAL

MCEVOY 000078