UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHARLENE McEVOY | : CIVIL ACTION NO.:  3:17-CV-01861 (MPS) |
| Plaintiff, | : |
| | : |
| | : |
| v. | : |
| | : |
| FAIRFIELD UNIVERSITY | : January 25, 2019 |
| Defendant | : |

**DEFENDANT FAIRFIELD UNIVERSITY'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Fairfield University fully explained the basis for granting its Motion for Summary Judgment in its original Memorandum of Law.  This Reply will focus on the arguments McEvoy makes in her Opposition to Summary Judgment ("Opposition" or "McEvoy brief") and will demonstrate that she has not established age discrimination.

**The Same Actor Inference is applicable to this case as Babington and Williams decided to offer McEvoy a one-year appointment in 2015 and choose someone else in 2016 to be the Director of the Pre-Law Advisory Program.**

In her opposition, McEvoy brief, p. 34, McEvoy asserts that the same actor inference does not apply.  She is wrong.  In the spring of 2015, with McEvoy's three-year term expiring, Lynn Babington and Yohuru Williams considered other faculty members for the Pre-Law Advising Program Director position.  They considered Dr. Alphonso, Dr. Straus and others.  Babington Tr. 37-39.  They decided to ask Dr. Alphonso if she would be interested.  She declined.  At that point, they went back to the "drawing board" and decided to offer McEvoy a one year appointment.  They certainly could have offered the position to another faculty member, but instead asked McEvoy to continue for another year.  They were the decision-makers on the one year appointment.  They were also the individuals who decided in

2016 to not reappoint McEvoy. As there was only a one year difference between the appointment and the decision to not reappoint, the inference against age discrimination is exceptionally strong. See, Saliga v. Chemtura Corporation, 2015 WL 5822589 (D. Conn. 2015).

**McEvoy's Perception of her own Performance is Not Relevant.**

McEvoy asserts that she did a stellar job. McEvoy brief, p. 3-8. The law is clear that her opinion is not relevant. See Ricks v. Conde Nast Publ'ns., Inc., 6 Fed. Appx. 74, 78 (2d Cir. 2001); Shabat v. Blue Cross Blue Shield of Rochester Area, 925 F. Supp. 977, 988 (W.D.N.Y. 1996). For Babington, the Program "just wasn't good." Babington Tr. 58, Exhibit 12.

**There were Legitimate, Non-age Related Reasons for Appointing Dr. Alphonso.**

The undisputed facts show that McEvoy did not do what she said she would do and did not report to Babington or Williams what she did that she thought was student-focused and student-centric[1]. When McEvoy applied for the position, she indicated that she

> would keep records of which students from which majors have an interest in law school and those who have been successful in getting admitted. I would also keep track of the schools that Fairfield Students are not accepted to. . . . Summer internships or semester long internships are essential so that students will know what they are getting into to see if they like this line of work.

Exhibit 5. When Senior Vice President Paul Fitzgerald appointed her, he noted his expectations that McEvoy was

> to gather and analyze data on GPA's, LSAT scores and relative success in gaining admissions to various law school in order to assess outcomes and give the best advice and guidance to students. The Office of Institutional Research will be able to assist ...in setting this up. You plan to increase the number of internships . . .

---

[1] McEvoy's brief, p. 3-8 describes what she did, but there is no mention in many of her reports of the number of student participants or an analysis of the program.

7323103v2

Exhibit 6.  McEvoy did not provide information from any analysis to Fitzgerald, Sapp, Babington or Williams as she did not do any analysis.  Exhibits 7, 8, 9, and 10.

In July 2013, McEvoy responded to a request from Sapp, after he reviewed her annual report, for additional information about the students she advised, what the LSAT scores were for seniors, and a list of law school to which students were accepted and would be attending. He asked about the impact of the LSAT Boot Camp and asked about student internships.  She indicated that there is no information about internships.  While she provided some information to Sapp, Exhibit 11, she never provided such information after that point, even though this was the very information Fitzgerald had listed when he appointed her and would necessarily help in assessing the Program.

McEvoy did nothing to analyze what she was doing to learn whether the Program was improving students' chances for acceptance into top tier law schools.  McEvoy had no organized system for gathering data about where students applied for law school and where they were admitted or for analyzing it.  All she had was what she found out informally. McEvoy Tr. 27-28.  Even then, she did nothing with what little anecdotal information she had. McEvoy Tr. 29.  If she had information about LSAT scores, GPAs, or law school admissions, she did not share that information with Fitzgerald, Sapp, Babington or Williams.  McEvoy Tr. 29-31; 77-78.

She did no analysis of the programs she ran to determine how they helped students decide whether to go to law school, improve their LSATs, or why attendance in the programs went down in successive years.  McEvoy Tr. 79-70, 81, 115-117, 140.  While Career Services identified 172 students with some interest in going to law school, there were only 40-50

7323103v2

students that McEvoy claimed were active.  She, however, did not do anything to reach out to other students.  McEvoy Tr. 80-81.  What is clear is that McEvoy failed to provide University administrators with any analysis of what she was doing.

McEvoy stated that the decision to continue her as Director should be based on an analysis of her reports.  McEvoy Tr. 107.  Her reports revealed that she had not achieved what she had set out to do and did not analyze what she was doing and how it could be improved.  Exhibits 7-10.  She had also rejected the idea that she should see what other schools were doing.  McEvoy Tr. 59.  The decision to appoint Dr. Alphonso in an effort to improve the Program was not based on age.

**McEvoy Has No Evidence of Age Discrimination.**

Under oath, McEvoy was asked whether Fitzgerald, Sapp, Babington or Williams had ever made any derogatory or discriminatory statements to her.  She was also asked whether any of them had said anything that referenced her age.  She responded "not that I recall."  She was then asked if that was something that she would recall, to which she responded "perhaps."  McEvoy Tr. 128-129.  What she has relied on is the difference in her age and that of Alphonso, but that is not evidence of age discrimination.  Even in her opposition, she cites to no age related statements directed to or about her.  McEvoy brief, p. 28.

In a creative, but misplaced, distortion of case law, she cites to Ash v. Tyson Foods, 126 S. Ct. 1195 (2006) for the proposition that calling a grown African-American male employee "boy" was evidence of racial animus.  McEvoy brief, p. 33.  She then tries to take criticisms of the Program and transfer such comments, which were not made while she was the Director, and personalize them to her.  That is not what Ash stands for.  In fact, Ash indicated that the disputed word will not always be evidence of racial animus as the "speaker's meaning

4

7323103v2

may depend on various factors including context, inflection, tone of voice, local custom, and historical usage." Id. at 1197.

McEvoy cites Williams' testimony out of context to suggest age bias. McEvoy brief, p. 23, 32. She lists a few words or expressions inferring they suffice to create age bias. These terms have been cherry-picked from Williams' deposition. A review of his testimony shows that 1) he was not referring to McEvoy, 2) the statements were referencing comments made to him by Pates, who repeated the comments of alumni who were being asked for donations, and 3) the statements that came from students. None of the comments were directed at McEvoy. Williams testified to what Pates told him he learned from potential donors about their concerns with the way the University approached certain issues. The alumni thought the Pre-Law Program was frozen and questioned whether the funds they were providing were being used to get the best internships around intellectual property, health care, and emerging technologies law. What the alumni were seeing was a "model that was more 20th century, backward facing than 21st century." Williams Tr. 70-71, 75. The donors were concerned that Fairfield was not being responsive to changes in the law when there were "new emerging opportunities." Williams Tr. 73. These comments described the Program. The alumni concerns were with the direction of the University and the Program. Williams Tr. 162. These statements do not reflect Williams' attitude towards McEvoy or her age.

The next citations related to information Williams received from students who described the Program as a "very traditional pathway" into the law. He gave an account of a Fairfield University graduate, who received a law degree and then could not find a job. The graduate complained to Williams that he should have been directed to intellectual property and new technologies rather than a more traditional route. Students told Williams that they were

5

"kind of preparing for a 19th century law career in the midst of a major change [in the law]." Williams Tr. 84. Williams explained that

> there was a need to really be thinking about student outcomes...to make sure that our students were career-ready beyond this kind of traditional pathway of law school for the sake of practicing in one of those more traditional forms.

Williams Tr. 85. His testimony related to what students were telling him about the Program and were not comments by the students or Williams about McEvoy's age. Williams Tr. 89.

McEvoy also cited Williams' comments on Tr. 112 about the 2014-2015 Report, Exhibit 9. He explained that the Report, which was consistent with what he was seeing, did not reference or engage with Fairfield2020, the University's strategic plan. The Report had no strategic visioning and no analysis. For Williams, the Report highlighted the problems with the Program and the lack of awareness of the need to change. Williams Tr. 112-113. There is nothing in this testimony from which age discrimination can be inferred.

McEvoy next suggests that the phrase "very traditional pathway" in referring to the Program is somehow code for age discrimination. Once again, McEvoy contorts the testimony. On page 171, Williams describes the problems that universities at large and Fairfield have

> as they were doing students a disservice by them getting degrees at institutions where it would be very difficult for them to be competitive for jobs in the best firms....[T]hat's a very traditional pathway, but it was a real concern. The price tag is very high. So when we talked about making students career-ready, we had to be thinking as an institution about what the value proposition of that degree was and how to ensure that students were able to not only matriculate successfully into law school, but think about the outcomes once being there.

Williams Tr. 171-172. Changes in the vision for the University, taking into account the changing economy, the high cost of higher education, and the competitiveness for jobs coming out of law school made it increasingly apparent that the University wanted to have its students

6

graduate from top tier law schools. These were economic realities and did not relate to McEvoy or her age. Williams Tr. 171-172. These issues also related to having a Program that was student-centric and student-focused.

The statements that McEvoy cites as being age related are not about her, but about the Program. Statements that someone "lacked energy" or employees needed to "have fire in their bellies" have been found not to reveal age animus. Kelly v. Signet Star Re, LLC, 971 F. Supp. 2d 237, 251 (D. Conn. 2013); Brennan v. Metropolitan Opera Ass'n, 192 F. 3d 310, 314-18 (2d Cir. 1999). Even comments that someone was part of the "old guard" does not impute age bias. Henry v. Wyeth Pharmaceuticals, Inc., 616 F. 3d 134, 150 (2d Cir. 2010). See also McGarty v. New York City, 2014 WL 4626019, *13-14 (S.D.N.Y. 2014). In Koestner v. Derby Cellular Products, 518 F. Supp. 2d 397 (D. Conn. 2007) the court said comments must be considered in the context of all evidence. In Seltzer v. Dresdner Kleinwort Wasserstein, Inc., 356 F. Supp. 2d 288, 295 (S.D.N.Y. 2005) the district court analyzed challenged statements using a 4 part test: who made the remark; when the remark was made; the content of the remark; and the context of the remark. Here, Williams, one of the decision-makers, made the remarks, but during his deposition, not at or prior to the decision. The remarks themselves are not related to McEvoy and are otherwise unrelated to her. It would be a strained interpretation of the comments to infer age animus. See also Witkowich v. Gonzales, 541 F. Supp. 2d 572, 584-585 (S.D.N.Y. 2008).

There are no comments addressed to McEvoy that implicitly or explicit refer to her age or are indicative of age animus. Newsome v. IDB Capital Corporation, 2016 WL 1254393, at *14, n. 32 (S.D.N.Y 2016) (derogatory names "jackass," "stupid," "idiot," "retard," "loser," and "lazy" are neutral terms not sufficient to imply animus). McEvoy has presented no

7

evidence of age animus or age discrimination or even stray remarks made to her.  She has failed to establish a nexus between Williams' deposition statements and the decision to not appoint her.

**There are No Material Inconsistencies Regarding the Reasons for Not Reappointing McEvoy.**

As detailed in Defendant's Memorandum, a plaintiff must establish "implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 846 (2d Cir. 2013).  See McEvoy brief, p. 29-30.  Even if the rationales are different, they must be materially inconsistent with one another.  Ehrbar v. Forest Hills Hosp., 131 F.Supp.3d 5 (E.D.N.Y. 2015) (having multiple reasons for firing an employee does not constitute pretext where the differences among them are not materially inconsistent).  See Roge v. NYP Holdings, Inc., 257 F.3d 164, 170 (2d Cir. 2001); Mathews v. Huntington, 499 F. Supp. 2d 258, 267 n. 6 (E.D.N.Y. 2007).  See McEvoy brief, p. 29-36.

In its CHRO and Interrogatory responses, the University pointed out concerns with the Program, including reports of difficulties students had reaching Dr. McEvoy, her lack of cooperation with the Advancement Office, and her failure to address new areas of the law. The University explained that Dr. Babington and Dr. Williams hoped to find a way for the Program to be more responsive to students and alumni, to improve the working relationship with the Advancement Office, and to reinvigorate the Program.  Exhibits 24 and 25.

Babington testified that she wanted the Program to be more student-centered, to improve student outcomes, and to provide mentorship opportunities.  She wanted more data in order to provide guidance to students, and wanted to be using best practices.  Babington Tr.

8

74-79, Exhibit 12. There is nothing in her testimony that is materially inconsistent with the CHRO and Interrogatory responses. Rather, she elaborated on the University's CHRO and Interrogatory responses explaining the need to reinvigorate the Program, have it be more responsive to students and alumni, and improve the working relationship with the Development Office. Exhibit 24 and Exhibit 25.

Williams explained that he wanted the Program to better align with the strategic plan, Fairfield2020; to emphasize student-centric programming; to improve student outcomes; and to provide students with experiences that would distinguish them from those applying to law school from other institutions. He also wanted to position the Program so that it would attract additional donor funds. He saw a need for new ideas. Williams Tr. 176-182, 186, Exhibit 13. Williams' explanation, like Babington's, is consistent with the CHRO and Interrogatory responses[2].

There are no material implausibilities, inconsistencies, or contradictions for appointing Alphonso and no material facts to support a claim of pretext. Also as noted in the Defendant's Memorandum of Law, even a showing of pretext is not sufficient to establish age as the "but for" cause. Memorandum in Support of Summary Judgment, p. 26-28. McEvoy has not produced any evident that her age was the "but for" cause for her not being reappointed to the Director position.

---

[2] Plaintiff claims that Alphonso made no changes to the Program after her appointment, McEvoy brief, p. 35, however, that assertion is not consistent with Quinlivan's testimony. Quinlivan Tr. 43-45, Exhibit 16. See footnote 11, Memorandum in Support of Summary Judgment.

7323103v2

## Conclusion

Faced with the University's evidence, McEvoy has offered no evidence to support a claim that age was the "but for" reason for the University's decision.  There is no evidence of a discriminatory animus.  She has not shown that the University's explanation for appointing Alphonso is unworthy of credence or that the change was not based on the legitimate desire to improve the Program.  McEvoy has provided no evidence that there were inconsistent reasons given for the change in the directorship.  There is no evidence that her age made a difference in the decision-making.  Summary judgment must enter for Fairfield University.

DEFENDANT
FAIRFIELD UNIVERSITY

By: _____
        Gary S. Starr
        Shipman & Goodwin LLP
        One Constitution Plaza
        Hartford, CT 06103
        Telephone: (860) 251-5000
        Facsimile: (860) 251-5216
        Juris No. ct06038
        Its Attorneys

10

7323103v2

## CERTIFICATION OF SERVICE

This is to certify that on January 25, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. The following Parties may access this filing through the Court's system:

Todd D. Steigman
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford, CT 06103
Phone: 860-246-2466
Fax: 860-246-1794
Email: tsteigman@mppjustice.com
*Counsel for Plaintiff*

_____
Gary S. Starr

7323103v2